PILLSBURY–WASHBURN FLOUR–MILLS CO., Limited. et al. v. EAGLE.

(Circuit Court, N. D. Illinois. October 13, 1897.)

TRADE-MARKS—UNFAIR COMPETITION.

A number of competing millers in Minneapolis, Minn., who make flour by the roller process, and each of whom uses his peculiar marks in connection with the words "Minneapolis, Minn.," and some of whom also mark their packages "Minnesota Patent," have no such joint or separate right in these words as will enable them to maintain a joint bill, in behalf of themselves and others similarly situated, to enjoin a grocer from selling flour made in Wisconsin, and branded with his own name, in connection with the words "Best Minnesota Patent, Minneapolis, Minn."

This was a suit in equity by the Pillsbury-Washburn Flour-Mills Company, Limited, and six other parties, against Harry R. Eagle, to enjoin him from using the words "Best Minnesota Patent, Minneapolis, Minn.," in connection with flour sold by him.

Aldrich & Reed, for complainants.
Peckham & Brown, for defendant.

SHOWALTER, Circuit Judge. The complainants, seven in number, are severally owners of flouring mills situated in Minneapolis, Minn. They sue "on behalf of themselves and of all other persons, firms, and corporations similarly situated and interested in respect to the subject-matter of this suit." They are, with respect to each other, competitors in trade. Each has his own peculiar marks or indicia of trade. Each uses the words "Minneapolis, Minn." But, on the theory of the bill, these words, as used by complainants, signify that the flour in the package so marked was ground at a mill in Minneapolis, and, per consequence, by some person or corporation for the time being operating a mill in that city. These words on a flour package are not, on this understanding, a representation that the flour therein was made by any particular person or at any particular mill. They have, hence, no function as a trade-mark. They are not a sign of origin of which, as incidental to the good will of any particular milling business, a property right could be predicated. Further, some of the complainants put upon packages containing flour the words "Minnesota Patent." Complainants say these words signify that the flour contained in such packages was ground at some mill in Minnesota, and, of course, by some miller operating a mill in that state. They say, also, that the flour ground at their several mills is of hard spring wheat, such as is grown in Minnesota, the Dakotas, and elsewhere in the Northwest, as distinguished from winter wheat grown in territory more southerly, and that such flour is ground by the Hungarian or roller process.

The complaint is that defendant, who is a grocer doing business under the name of H. R. Eagle & Co., and having his place of business in Chicago, sells flour in sacks branded, "H. R. Eagle & Co., Best Minnesota Patent, Minneapolis, Minn." Complainants say that this brand is a false representation, in that said flour is not made in Minneapolis, or in the state of Minnesota. But, on the theory of the bill, how can this misrepresentation affect injuriously any particular individual among the complainants? These words do not imply that any one of the complainants milled the flour sold by defendant. A person whose habit in buying flour, or whose disposition to buy, is within the good will of any one of the complainants, and of whose custom a property right vested in such complainant may, in the trade-mark sense, be predicated, could not be deceived by defendant's brand into the belief that he was buying flour made by such complainant. The idea seems to be that defendant sells to persons who, but for his false representation, might buy flour made by some one or other of these complainants. But which one? The false representation has no definite relation to any individual. Furthermore, the "wrong" or "injury" complained of is imaginary. It is not a deprivation of any right already fixed or vested. Where one dealer sells, the customer, to the extent that his wants are supplied, is out of the market, and a rival dealer has thus and to that extent lost the possibility of selling. But is the latter dealer wronged? Or is he any the more wronged if the former used a false representation, not touching any right vested in the latter, in effecting the sale? If a trader sells to

82 F.—52

A., using fraud or artifice in effecting the sale, another trader in goods of a like kind has no cause of action merely because, as a matter of speculation, A. might possibly have dealt with him but for the prior sale.

The theory of this bill, if it be that some one of the complainants (though which cannot be known) will or may be injured by the alleged misconduct of defendant, and that, therefore, an injunction may be granted at the suit of all, is a mistaken one, as it seems to me. On the other hand, no one of these complainants, either alone or jointly with his co-complainants, has any property right in the reputation of Minneapolis or of Minnesota as a flour-manufacturing center or territory. Each complainant may sue for a wrong to his own reputation, or for a trespass on the good will of his own business; but that, it seems to me, is not the case here presented. There is nothing peculiar to Minneapolis or the state of Minnesota, as localities, which affects the quality of the flour made at that city or in that state. Complainants use steam and water power in running their mills. There is no special reason why flour precisely the same in quality, made out of the same material, with machinery of the same sort, may not be made in Wisconsin or Iowa or Illinois or elsewhere. The case does not belong to that category wherein the quality of the manufactured article depends upon some quality peculiar to the location where the manufacturing business is carried on. The complainants, as already said, are competitors in trade. They are not members of an association. This is not a case where the defendant is professing membership in a society of which he is not a member, whose privileges he is not entitled to enjoy, and whose guaranties for business or other purposes he has no right to appropriate.

The defendant states that in the year 1889 he procured his supply of flour to be ground and put up by some one or other of these complainants in Minneapolis. His flour sacks were then marked, "H. R. Eagle & Co., Best Minnesota Patent, Minneapolis, Minn." He states, also, that the words "Minnesota Patent" are descriptive. They signify to the trade a flour made by the Hungarian or roller process out of the hard spring wheat grown in the Northwest, such flour, wherever milled, being known in the market as "Minnesota Patent." It seems that in 1893 defendant ceased to patronize exclusively millers in Minneapolis. From that time he procured a portion of the flour, branded as stated, and sold by him, to be manufactured at a mill in Wisconsin. He states that the flour so ground for him at said mill was essentially the same, made of the same material, and by the same process, as that milled and put up for him in Minneapolis; that since 1895 he has procured his flour exclusively from a mill in Wisconsin; and that he retained the markings which identified to his customers the kind and quality of flour sold by him. He insists, further, that the words "Minneapolis, Minn.," on a package of flour, have come to signify in the trade, not that the flour was made at a mill in Minneapolis, but that it is the kind of flour made at that city. He calls attention, also, to the showing on the face of the complainants' bill that one of the complainants grinds flour at a mill, not in the city of Minneapolis, but

some 18 miles distant therefrom, and marks the flour so ground "Minneapolis, Minn." Primarily, of course, the words "Minneapolis, Minnesota," printed upon a manufactured article, would signify either that that was the place of manufacture, or that that was the place of business of the vendor; but on the showing here, as well on the side of complainants (take, for instance, the affidavit of Harry B. Mitchell, among others) as on that of defendant, it is by no means clear that the defendant's contention is not true, namely, that "Minneapolis," on a flour sack, has come in reality to signify to purchasers the quality of the flour, rather than the place of manufacture. If it be true, as insisted by complainants, that the word "Minneapolis," as a brand on flour, signifies the location rather than the quality, and that people buy the flour so marked merely because they believe it was made at Minneapolis, then the fact that one of the complainants mills his flour, or a large part of it, not at Minneapolis, but at a point some 18 miles distant therefrom, and yet marks it "Minneapolis, Minn.," would make another difficulty in the way of the proposed injunction. For reasons first above given herein, however, my opinion is that no injunction should issue, and the motion is denied.