LA REPUBLIQUE FRANCAISE et al. v. SCHULTZ.

(Circuit Court of Appeals, Second Circuit. January 24, 1900.)

No. 74.

1 UNFAIR COMPETITION—LABELS—MINERAL WATERS.
Labels on bottles of artificial mineral water, describing it merely as "Vichy (Grand Grille)," imply that the bottles contain natural Vichy water from the Grand Grille spring, and the sale of such water in competition with the natural water constitutes unfair competition.[1]

2. SAME—ACCOUNTING FOR PROFITS—LACHES.
Where a defendant had sold artificial mineral waters for 30 years under the same labels, which implied that the water was from a well-known natural spring, before the proprietors of such spring took any steps to prevent the unfair competition, they are not entitled to an accounting for gains and profits made during such time.

3. SAME—SUIT IN NAME OF FOREIGN NATION.
The fact that a suit for unfair competition in the sale of water purporting to be from mineral springs is brought in the name of a sovereign nation, which is the owner of such springs, will not preclude the defense of laches, where the party beneficially interested as plaintiff is a private corporation.

[1] As to unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For former opinion, see 94 Fed. 500.

Rowland Cox and Herman Gustow, for appellants.

Briesen & Knauth, for respondent.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The existence in the commune of Vichy, in France, of numerous mineral springs, which have long produced water of high medicinal value, is well known. The water began to be sold as early as 1716, and became popularly known as "Vichy" or "Vichy Water." The republic of France is the owner of nearly all these springs, and by the terms of acts passed in 1853 and 1864 La Compagnie Fermiere de L'Etablissement Thermal de Vichy (hereinafter called the "Company") obtained the concession of the springs owned by the state for terms of years which have not yet expired. This company bottles at Vichy, and sells in France and in other countries, the waters of which it is the lessee, under labels which are its property, and of which the characteristic marks consist in the name "Vichy," and the name of the particular spring, and a woodcut vignette showing the "thermal establishment." In 1853 it began to export its water to this country, and in 1893 its shipments to this country were about 300,000 bottles. In 1896 its entire shipments amounted to nearly 10,000,000 bottles. The natural waters are exported in their original condition, and are not artificially charged with gas. In 1823 Struve, a German chemist, commenced in Dresden the manufacture of artificial mineral waters, by carefully analyzing the water of the natural mineral springs of Europe, and reproducing them with the same ingredients and the same properties, added from time to time to the scope of his manufacture, and included the imitation of the Vichy water, and his various products became widely known in Europe. In 1862 Carl H. Schultz, the testator of the defendant, began in New York the manufacture and sale of artificial Vichy water in accordance with the standard analysis of the Grand Grille spring by Bauer, an assistant of Struve. This spring was one of those owned by the French republic, and its water was considered to be of especial value. The labels upon the bottles in which the water was sold contained the words: "Vichy (Grand Grille). Carl H. Schultz,"—and also contained the words, "Carl H. Schultz's Vichy (Grand Grille)," and Bauer's analysis. This label was not in any respect an imitation of the company's label. After the commencement of this suit, Schultz changed his label so that it read: "Vichy. Manufactured by Carl H. Schultz,"—and contained the words, "Carl H. Schultz's Vichy, Compounded After Bauer's Analysis." This water has been usually put in siphon bottles, and has been continuously sold in very large quantities by druggists, vendors of soda, saloon keepers, and at hotels. In the year 1897 the output was about a million siphons. The bill in this case was filed against Carl H. Schultz on January 23, 1892. He died on May 29, 1897, and thereafter the complainants filed their bill of revivor against Louise Schultz, as executrix of his last will. After Decem-

ber 31, 1892, until his death, his label on each bottle was as follows: "Artificial Vichy. Manufactured from Distilled Water by Carl H. Schultz." In the publications and advertisements of Schultz there is no representation that his water is natural Vichy, but, on the contrary, its artificial character is asserted, and his water has gained a high reputation from its accurate conformity to the analysis of the genuine water. By intelligent purchasers of his Vichy, it was understood to be artificial, and the distinction was well known by physicians, who prescribed one or the other article according to the needs of the patient; and while, undoubtedly, the use of the name "Vichy" by Schultz when his water was first introduced into this country diminished the sales of the waters of the complainants, and gave quick notoriety and popularity to the article which he made, it did not confuse in the public mind the identity of the two articles, because the one was a still and the other a sparkling water. The sales of artificial Vichy in this country far exceed those of the natural water. No complaint or remonstrance by the lessees or their agents against the use of the Schultz labels was made prior to the commencement of this suit.

The facts of this case, like those in City of Carlsbad v. Schultz (C. C.) 78 Fed. 469, which, in its main features, resembles this case, are unique in their character. The word "Vichy," by itself, without other words of explanation, is not a technical trade-mark, but the words which Schultz originally placed upon his labels, "Vichy (Grand Grille)," imply that the water which the bottle contained was Vichy water from the Grand Grille spring; and thus the case becomes one of unfair competition by the testator's assertion that he was selling the water of the plaintiff's spring, and by the untruthful appropriation of its reputation. The principles in this class of cases, which are not strictly trade-mark cases, but analogous thereto, have been often stated, and are found in the decisions quoted in Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537–549, 11 Sup. Ct. 396, 34 L. Ed. 997, among which is Thompson v. Montgomery, 41 Ch. Div. 35, known as the "Stone Ale Case." Many of the cases are collected in Flour Mills v. Eagle, 30 C. C. A. 386, 86 Fed. 608, 41 L. R. A. 162. This misappropriation could have been prevented because the label did not fairly describe the water which he manufactured, and he could have been compelled to tell with complete plainness upon his labels that he was manufacturing in New York artificial Vichy water. What he was doing was to imitate Struve, and artificially manufacture a water which corresponded with the analysis of the Grand Grille spring. This misappropriation was, however, more apparent than real, because he was, in the literature which he circulated, announcing that his product was artificial and not natural; and this fact was thoroughly known by the ordinary consumers of the article, until Schultz's Vichy became an article distinct from the still water of the natural spring.

It is conceded that an injunction cannot now be directed, because the original defendant is dead, and there is no proof that his executrix is continuing her husband's business. The question of importance is whether an accounting shall be directed. An accounting

for the period within which the distinctively artificial character of the Schultz Vichy has been well understood would not seem to be equitable; but it is needless to consider that subject, for it is established in trade-mark cases, in accordance with the general principles of equity (2 Story, Eq. Jur. § 1520), that when "acquiescence of long standing," and "inexcusable laches in seeking redress," have been shown, the complainant is not entitled to an accounting, nor to a decree for gains and profits. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828. These prerequisites to a refusal for an accounting clearly appear in this case.

It is said that there can be no imputation of laches against the owner of the springs, the republic of France being a sovereign power. The lessee is the actual party in interest, which would profit by a decree for an accounting; and while the republic of France is the owner of the springs, and a party to the suit, the lessee is the one beneficially interested in the gains and profits which might result from a decree. The principle that laches are not imputable to the government of a nation is not applicable in this case. The decree of the circuit court is affirmed, with costs.