LA REPUBLIQUE FRANCAISE et al. v. SARATOGA VICHY SPRINGS CO.

(Circuit Court of Appeals, Second Circuit. April 9, 1901.)

No. 29.

TRADE-NAMES—INFRINGEMENT—INJUNCTION—"VICHY" MINERAL WATER.

The name "Vichy," a geographical name applied to mineral waters by the owners of springs in the commune of Vichy, France, to designate the locality of origin, and indicate the general characteristics of their waters, long favorably known to the trade, was very prominently displayed on labels on bottles purporting to contain "Saratoga Vichy Water," the "Saratoga" over it being in far less conspicuous type, so that, if the bottles stood on a table or shelf, the word "Vichy" was the marked and prominent object of sight, but otherwise purchasers would not mistake it for the French article. Held, that its effect was to represent to purchasers unaccustomed to the article that the water in such bottles came from the French wells, and that the use of the name in such form should be enjoined.[1]

Wallace, J., dissenting.

Appeal from the Circuit Court of the United States for the Northern District of New York.

Charles B. Hubbell and Archibald Cox, for appellants.
Edgar T. Brackett, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an appeal from a decree of the circuit court for the Northern district of New York, which dismissed the complainants' bill in equity to restrain the use of the word "Vichy" upon the defendant's bottles containing the water of the spring known as the "Saratoga Vichy Spring," and for other relief, upon the ground that the defendant's labels and advertisements improperly and unfairly misled purchasers to believe that they were buying the complainants' article, and unfairly interfered with their exclusive right to the use of the word "Vichy." 99 Fed. 733. The facts in regard to the title of the complainants to the spring at Vichy, and to the labels upon the bottles in which it is exported to this country, and the extent of its business in the United States were stated in the opinion of this court in the case of the same complainants against Schultz, 42 C. C. A. 233, 102 Fed. 154, and are as follows:

"The existence in the commune of Vichy, in France, of numerous mineral springs, which have long produced water of high medicinal value, is well known. The water began to be sold as early as 1716, and became popularly known as 'Vichy' or 'Vichy Water.' The republic of France is the owner of nearly all these springs, and by the terms of acts passed in 1853 and 1864 La Compagnie Fermiere de l'Etablissement Thermal de Vichy, hereinafter called the 'Company,' obtained the concession of the springs owned by the state for terms of years which have not yet expired. This company bottles at Vichy and sells in France and in other countries the waters of which it is the lessee, under labels which are its property, and of which the characteristic marks consist in the name 'Vichy' and the name of the particular spring, and a wood-cut vignette showing the 'Thermal Establishment.' In 1853 it began

[1]Misleading or false labels, see note to Raymond v. Royal Baking Powder Co., 29 C. C. A. 250.

to export its water to this country, and in 1893 its shipments to this country were about 300,000 bottles. In 1896 its entire shipments amounted to nearly 10,000,000 bottles. The natural waters are exported in their original condition, and are not artificially charged with gas."

The township of Saratoga Springs has long been known as abundant in mineral springs, the waters of which are distinguished by different names, and in March, 1872, the geyser or spouting spring of the defendant was discovered in that town. The water is alkaline, is regarded by medical men as a valuable mineral water, and has been recommended extensively by the defendant as having a wonderful similarity to the Vichy waters of France. The water was bottled and sold in 1873, and thereafter until 1876, by the owners of the spring, when the defendant, under the name of the Saratoga Vichy Spring Company, became the owner, and has since sold the water extensively under the name of Saratoga Vichy Water, or Natural Saratoga Vichy Water. The bottles, circulars, and advertisements have invariably used the words "Saratoga Vichy." The water is highly charged with natural carbonic acid gas, and is bottled under a high pressure of that gas. The water of the complainants is a still water. It was stipulated that the testimony in the Schultz Case could be used in this case by either party, and from that testimony it appears that the manufacture of artificial sparkling water, compounded after the analysis of Vichy water, has been extensively carried on in this country since 1862 under representations of its artificial character; that it was understood by intelligent purchasers to be artificial; and, as one was a sparkling and the other a still water, there was no confusion in the public mind as to the identity of the two articles, and the manufactured Vichy became an article distinct from the still water of the natural spring. The bottles and labels of the complainants and the defendant have been very unlike each other in general appearance and character, and one could not be mistaken for the other by any person who had an acquaintance with either. Until 1896 the words "Saratoga" and "Vichy" upon the labels were substantially in the same style and size of type, and the name "Saratoga" was as prominently displayed as the name "Vichy." In 1896 a neck label of white paper, printed in black and red letters, was added by the defendant to its other labels. The word "Vichy" is very prominently displayed, and the "Saratoga" over it is in far less conspicuous type; so that, if the bottle stands upon a table or a shelf, the word "Vichy" is the one which is the marked and prominent object of sight. Like the manufactured water, the Saratoga water is understood by consumers to be sparkling, and to have in that respect a character distinct from the still natural Vichy. It does not appear that the complainants expressed dissatisfaction with the acts of the defendant until the time of the commencement of this suit. So long as the defendant confined itself rigidly to the universally conspicuous declaration upon its labels and bottles and in its advertisements that the contents of the bottles were Saratoga Vichy Water, it did not violate the rights of the complainants, because Saratoga Vichy and the Vichy of France are well understood

to be different articles, in that one is a sparkling and the other is a still water. They are used differently, and, when used, no person could mistake one for the other. In this respect both the natural water of Saratoga and the manufactured water of Schultz resemble each other, and accordingly our decision in the Schultz Case intimated very strongly that, after the alteration by Schultz of his labels, subsequent to the commencement of the suit, so as to assert that his article was artificial Vichy manufactured by himself, he was not open to the charge of unfair competition. Until 1896 the defendant's bottles uniformly and without disguise declared that the contents were Saratoga Vichy Water, and thus proclaimed the difference between two well-known articles; but in the label of 1896 the defendant unfairly disregarded the previously acquired right of the complainants to the use of the word when applied to the product of their wells. The effect of the label is to represent to the purchaser not accustomed to the article that it is Vichy water, and "Vichy" properly signifies water from the French wells. It is, in fact, an untruthful label, employed for an objectionable purpose. It is true that a mere geographical name, without attending facts which have caused the name to become significant of a particular manufacture and to identify the manufacture as the product of a particular person, is not the subject of a trade-mark. The distinction, however, between mere names of a locality and the secondary signification of names which identify an article with its manufacturer or producer, and which tell the public that an article so produced is of singular excellence, with the result that the use of the name by a nonresident producer is unfair to the competitor and fraudulent to the public, has been long recognized. Elgin Nat. Watch Co. v. Illinois Watch-Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. ——. The decision in Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581, referred only to a denial of the exclusive right of a resident of a district of country to the application of its name to a well-known article of commerce,—in that instance coal,—so "as to prevent others inhabiting the district or dealing in similar articles coming from the district from truthfully using the same designation." The decisions are abundant that where the name of a district of country has been used by an inhabitant of that district to identify his product, and has become significant of the success and a declaration of the superiority of the product, a nonresident manufacturer cannot properly use the name to deceive the public and fraudulently obtain the good will which belongs to his competitor. Thus a watchmaker of some other town than Waltham cannot properly call the articles which he produces "Waltham Watches." The opinion in Flour Mills Co. v. Eagle, 30 C. C. A. 386, 86 Fed. 608, which exhaustively collates the authorities upon the subject, among which Thompson v. Montgomery, 41 Ch. Div. 35, and Wotherspoon v. Currie, L. R. 5 H. L. 508, are important, states as the result of the decisions the distinction which has been referred to as follows:

"The distinction, both in the English and American cases, is between those where a geographical name has been adopted and claimed as a trade-mark

proper and those where, as in the case at bar, it has been adopted first as merely indicating the place of manufacture, and afterwards, in course of time, has become a well-known sign and synonym for superior excellence. In the latter class of cases persons residing at other places will not be permitted to use the geographical name so adopted as a brand or label for similar goods for the mere purpose by fraud and false representation of appropriating the good will and business which long-continued industry and skill and a generous use of capital has rightfully built up."

The label of 1896 comes within the spirit of this prohibition, for it untruthfully tends to mislead the unwary purchaser, and to gain the reputation which the Vichy natural springs have acquired.

The defendant should be enjoined against the use of this neck label, or of any other label in which the place of the origin of its water is not as plainly and prominently made known as the fact that it is named Vichy. Let the decree of the circuit court be reversed, with costs of this court, and the case be remanded to the circuit court, with instructions to enter a decree in accordance with the principles herein expressed, and for an accounting of damages from the use of neck label of 1896, with costs of the circuit court.

WALLACE, Circuit Judge. I dissent from the opinion of the court, because, as I view the facts, the case does not disclose any attempt on the part of the defendant to represent its mineral water to purchasers as the French Vichy. In its advertisements the defendant has studiously presented its water to the public as a product of its spring at Saratoga; and the labels and dress upon its bottles not only have never borne any similitude to those upon the bottles of the complainants, but have always distinguished it as Saratoga Vichy Water so plainly that misapprehension by purchasers was impossible. The word "Saratoga" is the valuable part of the descriptive name, because the reputed therapeutic virtues of Saratoga waters have rendered them the most popular mineral waters known in the markets where the defendant's water is offered for sale, and no sane man having the right to sell his mineral water as a Saratoga water would be tempted to suppress that part of the name; or sell it by any name which would denote a different origin. All the Saratoga waters are bottled and sold by distinctive names, such as "Saratoga Congress Water," "Saratoga Hathorn Water," etc., and the defendant, in naming its water "Saratoga Vichy," did so merely to distinguish it from the other Saratoga waters, and selected "Vichy" as its distinctive name because its alkalinity assimilated it more nearly to the French Vichy. The label which has met with animadversion in the opinion of the court is one used on the neck of the bottles. It is a fancy label, having a white background, and printed upon it in red and black letters are the words "Saratoga Vichy." The word "Saratoga" is above the word "Vichy," but included between its extended V and Y. It is true that it is in smaller letters, but the letters are an eighth of an inch in height and breadth. Although not so conspicuous as the word "Vichy," it is so prominent that it is almost inconceivable that it would not be observed across a counter. If this were the only label on the bottle, there would be color for the theory that it might mislead

casual purchasers; but just below it is another label, covering nearly half the surface of the bottle, upon which are printed in letters three-fourths of an inch in length and breadth the words "Saratoga Vichy Water."

The decree which is authorized by the opinion will not be of the slightest practical benefit to the complainants, and will have no effect except to subject the defendant to expense, for I cannot believe that any person ever has been misled, or ever can be misled, by the use of the neck label, as the defendant has always used it, in conjunction with the body label.

I agree with the conclusion of the court below that the bill should be dismissed.