### STERLING REMEDY CO. v. SPERMINE MEDICAL CO.

(Circuit Court of Appeals, Seventh Circuit.   October 18, 1901.)

#### No. 825.

**1. UNFAIR COMPETITION—SCOPE OF INJUNCTION.**

A defendant having deliberately and for the purpose of deception imitated, not only the name which complainant had adopted for a medicinal remedy, but also the form and color of the tablets and the shape of box and style of label used by complainant, all of which were distinctive and peculiar, complainant is entitled to an injunction restraining all of such imitations.   In such case the court should not be nice in limiting the scope of the relief granted because some of the imitations if practiced singly and without fraudulent intent might not constitute unfair competition.[1]

**2. SAME—IMITATION OF NAME OR DESIGNATION.**

Whether the phrase "Candy Cathartic," used by the manufacturer of a remedy in connection with the name "Cascarets" to form an alliterative combination, is or is not, by reason of its descriptive character, one which may be appropriated as a valid trade-mark, the proprietor of a similar and competing remedy is not entitled to use it in a similar combination, in connection with a word idem sonans with the name "Cascarets," with the intention or effect of confusing or deceiving purchasers as to the origin of his remedy, nor in connection with an imitation of form, package, or label, with like purpose or effect.

**3. SAME—PROPER PROCEDURE IN SUITS—APPROVAL OF PROPOSED CHANGES.**

Where unfair competition has been found, the defendant must take the responsibility of deciding for himself what changes are necessary to avoid further infringement, and the court should not give its approval in advance to any suggested or proposed changes.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The appellant, the Sterling Remedy Company, filed its bill in the court below against the Spermine Medical Company to restrain unfair competition in trade.   The facts in the case, as disclosed by the evidence, are substantially as follows:   The complainant below, the appellant here, is a corporation created by the laws of the state of New Jersey, and is engaged in the preparation and sale of proprietary medicines, and is the successor in interest of the Sterling Remedy Company of Illinois, which latter company, in 1895, placed upon the market a remedy for constipation, adopting therefor the arbitrary name of "Cascarets."   The remedy was put up in octagonal, flat, dark brown tablets, initialed with the letters C. C. C.   The tablets were inclosed in tin boxes of peculiar design, and with original letterpress.   The

[1] Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper, 30 C. C. A. 376.

form of the article and the style and shape of the boxes were not necessitated by the nature of the product, but were selected arbitrarily to produce a characteristic form and dress, and were new as applied to preparations of this sort. In addition to the word "Cascaret" the alliterative phrase, "Candy Cathartics" was adopted as part of the name. The design and dress of the inclosing boxes and the names were new with respect to products of this character. This remedy was largely advertised, and with the result that it is now on sale in 35.000 retail drug stores in the United States, the Dominion of Canada, and in Europe. The sales in the year 1898 exceeded four million boxes. In the advertisements and circulars the names "Cascaret" and "Candy Cathartic," and the design of the boxes and form of tablet, had been prominent features, and to a greater or less extent had become the identifying badges of the complainant's preparation. It is also claimed, and to a certain extent proven by the evidence, that the words "Candy Cathartic," through advertisement and trade usages, have acquired a secondary meaning in connection with the remedy. The defendant up to the year 1899 manufactured an article called "Spermine," an alleged remedy for a wholly different disease. In that year it began the manufacture and sale of a remedy for constipation, put it in the form of a tablet of the precise shape and almost the exact size of the complainant's tablet, and of nearly like color, and in boxes of the same shape and size of the complainant's, and containing a corresponding number of tablets for the same prices charged by the complainant, and styled the same "Castorets," and closely imitated the letterpress and label on the complainant's boxes, and the advertising matter, and after it thus began the manufacture of "Castorets" it solicited orders of several wholesale druggists in Chicago, who declined to handle the preparation, upon the ground that it was an infringement of "Cascarets." The bill was filed in the court below on the 26th of June, 1899, and amongst other things prayed for an injunction as follows: "(3) That the said Spermine Medical Company, its officers, clerks, attorneys, agents, servants, salesmen, and workmen may be forever enjoined and restrained from making use of, by word of mouth or otherwise, in connection with the sale of a remedy or cure for constipation and other diseases, not made by or for your orator, as the name or designation of such remedy or cure for constipation and other diseases, of the word 'Cascarets' or any other word similar thereto in sound or appearance; that it may be in every way enjoined and restrained from making use of the labels, boxes, tablets, and indicia hereunto annexed and made a part hereof and marked defendant's Exhibits 'A' to 'D,' and from doing any act or thing whatsoever to induce the belief that a remedy or cure for constipation and other diseases by or for it made is the remedy or cure for constipation and other diseases known as 'Cascarets' of your orator, by or for it made and hereinbefore referred to, and otherwise in every way enjoining and restraining the acts of the defendant complained of." A temporary restraining order preliminary to a motion for injunction was issued on the 26th of June, 1899. On July 20, 1899, the defendant below presented to the court an altered label and tradename, which it proposed to use to designate its tablet medicine theretofore sold under the name of "Castorets," stating that it had desisted from the use of the trade-name and label complained of in the bill, and would desist therefrom, using in its stead the label presented, in which the name "Castor Caramels" was substituted for "Castorets," and designating them as "the only perfect candy cathartic," the label being of a pink color, but upon the same style of box, and the tablet being of the same shape. On that day the court made an order in which it decreed "that the proposed new style of label as submitted to the court, 'Castor Caramels.' may be used by the defendant as a designating symbol to be employed on packages of cathartic compound put up in manner and form as heretofore customary with the defendant at the time this action was begun, and that the defendant is hereby authorized to continue the use of such packages without liability to the complainant, provided that the legend 'Castor Caramels' and the label as this day submitted to the court be used to designate the packages of the defendant, and it is further ordered that the defendant be authorized to use the same style of package and the same style of tablet as heretofore used

by it in connection with the new style of label submitted to the court, and that the use of said new label, the use of the former style of package and tablet, are not within the purview of the restraining order heretofore entered in this cause, and that the restraining order heretofore entered be continued in force until the final hearing of the cause." On August 15, 1899, .the defendant answered to .the bill, and on October 23d of that year a replication was filed. On November 27th the complainant below moved for a preliminary injunction restraining the defendant from the use of the tablets, boxes, and other indicia of use by the defendant, and this motion was denied. On July 17, 1901, proofs having been taken, the cause came on for hearing, and a decree was entered in pursuance of the conclusions of the court: "(1) That the complainant has the right to bring this suit; (2) that the word 'Cascarets' is not descriptive, but is fanciful, and constitutes a valid trade-mark; (3) that the phrase 'Candy Cathartic' is descriptive, as used by both complainant and defendant; (4) that the size and shape of box and tablet used by complainant are common in connection with similar medicinal preparations, and that complainant has no exclusive rights therein, in connection with cathartic tablets; (5) that defendant's original label, in style, coloring, and letterpress, are so similar to complainant's label as under the facts of this case to constitute unfair competition; and (6) that the word 'Castorets' is an infringement of complainant's trade-mark 'Cascarets.'" The decree merely enjoined the use by the defendant of the word "Castorets" and of its original labels. The complainant excepted to the action of the court in refusing to restrain the defendant as prayed in the bill of complaint; for refusing to restrain defendant from the use of the box, tablets, and indicia mentioned in the bill, and each thereof, and from doing any act or thing whatsoever to induce the belief that a remedy or cure for constipation and other diseases made by or for the defendant is the remedy or cure for constipation and other diseases, known as "Cascarets," of the complainant, and for refusing to enjoin and restrain the use of the words "Candy Cathartic," and appealed from so much of the decree as denied relief in these particulars.

Frank F. Reed, for appellant

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge (after stating the facts as above). We have held in Hires Co. v. Consumers' Co., 41 C. C. A. 71, 100 Fed. 809, and in Mitchell v. Williams, 45 C. C. A. 265, 106 Fed. 168, that it is not proper, where unfair competition has been found, for a court of equity to give its approval in advance to a changed form proposed to be adopted to avoid future liability, but should in such cases restrain the use of the infringing devices, leaving to the defendant the responsibility of deciding for himself and at his own risk what changes are necessary to avoid infringement. The order of July 20, 1899, was therefore improvident, and should have been vacated by the decree. It is proper to add that that order was made before either of the decisions referred to, but the decree was entered subsequently to them, and should have conformed the action of the court below to the ruling of this court.

We have spoken so frequently to the subject of unfair competition in trade, and have declared the principles which, as we conceive, govern such cases, that the case before us calls for no special consideration of the facts. There was here manifest attempt to put upon the public the goods of the defendant as those of the complainant. The latter had provided a peculiar form for its tablets,

and a box of peculiar shape. This form and shape had not before been used in connection with such medicine. It is clear that the defendant adopted the style and shape of the boxes, the color of the tablet, and the letterpress upon the boxes and in advertising, to palm off his goods as those of the complainant. It is not a case of accidental imitation in some respect; it is a case of deliberate and designed imitation in all respects. The facts bring the case under the ban of the law, and the complainant was entitled to relief, as well against the form of the tablet and shape of the boxes as against the word "Castorets." Hires Co. v. Consumers' Co., 41 C. C. A. 71, 100 Fed. 809; Saxlehner v. Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60.

A more difficult question arises with respect to the use of the words "Candy Cathartic." It is claimed that these words are merely descriptive, indicating the quality of the compound, and cannot be appropriated as a trade-mark. This may be, although a different conclusion was reached by Judge Wing in Remedy Co. v. Gorey (C. C.) 110 Fed. 372. We do not find it needful to determine that question, since the bill here does not proceed upon the ground of trade-mark alone, but upon the ground of unfair competition in trade. There can be no trade-mark in one's name, or in a geographical name, or in a name descriptive of quality; but neither can be used for the purpose of perpetrating a fraud which affects the public. Meyer v. Medicine Co., 7 C. C. A. 558, 58 Fed. 884; Pillsbury v. Mills Co., 12 C. C. A. 432, 64 Fed. 841; Mills Co. v. Eagle (C. C.) 82 Fed. 816; Williams v. Mitchell, 45 C. C. A. 265, 106 Fed. 168; Reddaway v. Banham [1896] App. Cas. 199; La Republique Francaise v. Saratoga Vichy Springs Co., 107 Fed. 459, 46 C. C. A. 418. In a recent case in the supreme court (Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 675, 21 Sup. Ct. 274, 45 L. Ed. 380), the court remarked that, "Where an alleged trade-mark is not in itself a good trade-mark, yet the use of the word has come to denote the particular manufacturer or vender, relief against unfair competition or perfidious dealing will be awarded by requiring the use of the word by another to be confined to its primary sense by such limitations as will prevent misapprehension on the question of origin." So here, the use of the term "Candy Cathartics," if it be a descriptive term, was so used by the defendant below in connection with the form of tablet, the character of letterpress, and with a word idem sonans with the term "Cascarets" employed by the complainant, that the combination worked a fraud upon the public and a wrong to the complainant. If the term be a descriptive one, the defendant had no right to employ it in such combination, and could only use it under "such limitations as will prevent misapprehension on the question of origin." The bill sought so to restrain, and the prayer of the bill is no broader. If the defendant is of opinion that it may lawfully appropriate that term as a descriptive one, care should be taken that it is not employed in combination with infringement in form, shape, color, or letterpress. The duty is cast upon the defendant of deciding for itself, as we remarked in Hires Co. v. Con-

sumers' Co., supra, "how near he may with safety drive to the edge of the precipice, and whether it be not better for him to keep as far from it as possible." If the term be a descriptive one, the article to which it is applied must be differentiated in form, dress, and color, that the public may not be imposed upon and the complainant defrauded of its rights.

The decree is reversed, and the cause is remanded, with directions to the court below to vacate the order of decree of July 20, 1899, and to enter a decree in conformity with the prayer of the bill.