GLOBE–WERNICKE CO. v. BROWN & BESLY (three cases).

(Circuit Court of Appeals, Seventh Circuit. October 7, 1902.)

Nos. 805, 806, 807.

1. UNFAIR COMPETITION—IMITATION OF ANOTHER'S GOODS—INJUNCTION.

Complainant for many years made and sold box letter files under the names of "Leader" and "Eureka" files. The names were printed on the back of each file, and also on an emblem on the first of the index sheets inside. Complainant's name did not appear on the files, but they became thoroughly well known to the trade by the names, make-up, and markings as the product of its factory and attained a large sale. Subsequently defendant placed on the market files which copied those of complainant in names, emblems, colors, size, and style of type and general make-up so exactly that it would mislead the ordinary consumer, and having nothing thereon to indicate the maker. *Held,* that such action constituted unfair competition, and entitled complainant to an injunction restraining defendant from the use of such imitations, including the names and emblems, without regard to whether or not they constituted trade-marks.

2. PATENTS—UNAUTHORIZED MARKING OF ARTICLE AS PATENTED—JURISDICTION OF EQUITY.

Defendant, in making letter files on the order of a customer who sold the same as his own, copied from a sample furnished by the customer, which had been made for him by complainant, and upon which was a patent imprint placed there by complainant because of a patented device of its own used in the files. Defendant omitted the patented device, but through a mistake of employés, and without the knowledge of its of-

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165. Lare v. Harper & Bros., 30 C. C. A. 376.

ficers, the imprint was reproduced on a single order. *Held*, that such facts would not sustain a suit in equity for an accounting and injunction, there being no evidence of an intention to continue the infringement, the damages for past injury, if any, being recoverable at law.

Appeals from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

R. H. Parkinson, for appellant.
Lysander Hill, for appellee.

Before JENKINS and BAKER, Circuit Judges, and SEAMAN, District Judge.

BAKER, Circuit Judge. Appellant began these suits, the first to restrain infringement of trade-marks and unfair competition respecting appellant's "Leader" box-files, the second for the same purposes regarding appellant's "Eureka" box-files, and the third to enjoin appellees in that case from marking box-files with appellant's "Patent Imprint," namely, "Patented December 22, 1896."

In the "Leader" case it is shown that for some years prior to 1897 it was open to the world to make box-files for letters and papers, in book-form, of paper-board, with leatherette-covered backs, paper-covered sides, hinged lids and drop-pieces, and containing index-sheets, and to use generally such colors, printing, and marks as one might choose. The word "Leader" was registered as appellant's trade-mark in 1885. In 1897 appellant had a well-established and valuable trade in its "Leader" file. This file was uniformly made in book-form, with yellow leatherette back, and with the other surfaces covered with marbled paper of a bluish tone. On the back, printed in black letters of different sizes, appeared the words "The Leader File," "Letters," "From" and "To," appropriately spaced and separated by triple horizontal lines. On the edge of the flap was a wafer-like label of reddish hue with the words "Press Here" in white letters thereon. Inside, on the top of the index-sheets, on a reddish ground was exhibited a large globe, in black, with a streamer diagonally across it, on which "Leader" was printed in large black letters. Appellant's name did not appear, but the file was thoroughly well known to the trade by its make-up, name, colors, and markings as the product of appellant's factory, and in its ensemble it was unmistakably and readily distinguishable from all others on the market in 1897. The "Leader" files were in such favor with consumers that jobbers and retailers generally were compelled to carry them in stock to meet the demand, although they were required to pay appellant materially larger prices therefor than other files of practically the same cost of production brought. Prior to 1897 appellee had been putting out, under its own name and marks, box-files that could not be confounded with appellant's. In 1897 appellee put on the market a file that copied the "Leader" in make-up, name, colors, size and style of type, markings, and emblems so exactly that it would mislead the ordinary consumer. This imitation bore nothing to indicate appellee as maker.

Appellant asked separately that it be protected in the use of the word "Leader" as a trade-mark, and in the use of the globe emblem as a trade-mark, and that, on the ground of unfair competition, appellee be enjoined from continuing its imitation of appellant's "Leader" file. The Circuit Court denied the first two prayers, and limited the grant of the third to restraining appellee from using on the top of the index-sheets the combination of the globe emblem (or any imitation thereof) with the word "Leader" streamed across it.

As to unfair competition: There is a contention that this is a "spite" suit, but the evidence satisfies us that it was brought in good faith, and such was necessarily the view of the Circuit Court in granting partial relief. We also agree with the Circuit Court in holding that the imitation of the index-sheets would deceive the ordinary purchaser, and that appellee "had a purpose that such effect should result. This constitutes unfair competition, notwithstanding that the merchant purchasing from the manufacturer may not have been deceived. The point is that the purchaser is given possession of the means to deceive the public." But the injunction should have been extended as well to the exterior imitation. Conceding, arguendo, that appellant had no valid trade-mark in the word "Leader" nor in the globe emblem, and that appellee might fairly use any of the elements of appellant's "Leader" file in such a way as honestly and efficiently to distinguish its own files from appellant's, nevertheless it was unlawful for appellee to copy the ensemble of the "Leader" file, as it did, with the purpose and effect of misleading the public. Hires Co. v. Consumers' Co., 41 C. C. A. 71, 100 Fed. 809; Sterling Remedy Co. v. Spermine Medical Co., 50 C. C. A. 657, 112 Fed. 1000. Appellant was entitled to a decree enjoining the use of the imitation set out in the bill and shown by the exhibits, and to an accounting.

Concerning the alleged trade-marks: Whether the globe emblem had been applied by others upon letter-files before appellant began its use, whether "Leader" is a word that may properly be selected as a trade-mark, and whether, if the word may be taken as an arbitrary token of origin, it was actually used by appellant only to mark size, style, quality, and price for convenience in dealing with its customers, we do not deem it our province to inquire, upon this record. This particular file (one of many made by appellant) came to be known to the trade, not by the word or the emblem merely, but by its appearance as a whole, which had been uniformly maintained, and of which the word and the emblem were but two of very many features. The decree to be directed will protect appellant fully in its "Leader" file as made, and we will not undertake to say in advance that appellee is likely to use the word or the emblem upon files which in other respects bear no resemblance to appellant's.

In the "Eureka" case, the controlling facts, mutatis mutandis, are the same as in the "Leader" case, and appellant should have the same relief.

In the "Patent Imprint" case it appears that Pettibone, Sawtelle & Co., stationers, for many years prior to 1897 had been selling box-files of their own design, under the name of "The Diamond File," which

were made for them by various manufacturers. On December 22, 1896, appellant obtained a patent for an index-pin. Thereafter in making up an order of "Diamond" files for Pettibone, appellant used its patented device, and at the bottom of Pettibone's· design for the back printed the words, "Patented December 22, 1896," in letters so small as to be almost illegible. In March, 1897, Pettibone requested Sullivan, superintendent of appellee's factory, to make one gross of these "Diamond" files. Sullivan examined the sample shown him, noticed the patented pin, told Pettibone he could not use that pin, but in other respects could duplicate the file. Sullivan did not notice the patent imprint on the back. The order was made up and delivered without being examined by Sullivan or any officer of appellee. The imprint was never used but the once by appellee. When appellee's managing officers learned that the imprint had been used on the "Diamond" files made by appellee, they gave orders that thereafter all patent imprints be left off of files made in their factory so that there might be no possibility of mistakes.

These "Diamond" files were marketed as the product of Pettibone, Sawtelle & Co. They could have made them for themselves. They chose to engage manufacturers for that purpose. They had as much right to employ appellee as appellant. Appellee had no intent to infringe appellant's patents or trade-marks or distinctive dresses. The patented index-pin was not used. Appellee intended merely to reproduce, in name and markings, Pettibone's "Diamond" file. Treating what was done as a trespass upon appellant's rights, there was a plain and adequate remedy at law, for the evidence fails to sustain the allegations of threatened continuation and irreparable injury. There was no error in dismissing the bill for want of equity.

The decrees in the "Leader" and "Eureka" cases are reversed, and the causes remanded, with directions to enter decrees in consonance with this opinion. The decree in the "Patent Imprint" case is affirmed.