### AMERICAN CEREAL CO. v. ELI PETTIJOHN CEREAL CO.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1896.)

No. 315.

**1. PRELIMINARY INJUNCTION.**
    A preliminary injunction, being somewhat in the nature of a judgment and execution before trial, should not be granted except in cases of pressing necessity. The right to it must be clear, and the apprehended injury grievous; and generally, where the injury may be measured in money, the alleged wrongdoer should be shown to be pecuniarily unable to respond in damages.

**2. SAME—TRADE-NAMES.**
    A preliminary injunction against the use of the name "Pettijohn" in connection with certain prepared cereal foods *held* to have been properly denied, where, upon the evidence, complainant's exclusive right to the name was doubtful. 72 Fed. 903, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This suit was brought to enjoin the use of the appellant's trade-name, "Pettijohn's California Breakfast Food," applied to the manufacture of rolled wheat. The bill charged that in the year 1889 three brothers of the name of Pettijohn (William A., Lawrence W., and Samuel R.) commenced the manufacture of rolled wheat at Minneapolis, Minn., selling their product under the name of "Pettijohn's California Breakfast Food." This business was continued until November, 1890, when it was sold to a corporation, Petti-

john California Breakfast Food Company, which succeeded to the business, and continued to manufacture the product at that place, and to sell the same under the same name. The corporation erected or leased a mill in Minneapolis, operated it, and acquired from the three Pettijohns all their rights to the use of the name "Pettijohn" and "Pettijohn's," the word "California." and the words "Breakfast Food." This business, with its machinery and good will and trade-name, was sold to the appellee in October, 1893, who continued the business as successor, selling rolled wheat under the same name, in packages of the same size and shape, and under the same labels, with such changes as were necessary to indicate that the American Cereal Company was the proprietor. On January 7, 1894, the mill was destroyed by fire, since which time the appellee has manufactured this product at other mills owned by it, disposing of the product under the same name. Eli Pettijohn, the father of the three brothers named, came to the city of Minneapolis from his home in the state of California in the autumn of 1893, and, after the destruction of the appellee's mill by fire, in connection with certain other persons organized a corporation for the manufacture and sale of rolled wheat, and placed upon the vessels containing the product the trade mark and name "Eli Pettijohn's Best," accompanied by a picture of Eli Pettijohn. It is alleged in the bill that at this time the name of Pettijohn was not known in the United States of America in connection with any cereal food product other than the rolled wheat which was first made by William A. Pettijohn and his brothers at Minneapolis, and by their successors in that business, except that it is alleged that some rolled wheat had been made in the state of California, and in other parts of the United States west of the Rocky Mountains, under the name of "Pettijohn's California Breakfast Gem," and that the name "Pettijohn," used in connection with rolled wheat, has come to indicate and mean to purchasers and consumers east of the Rocky Mountains the rolled wheat made by the appellee.

The answer asserts that rolled wheat was first invented and made known by Eli Pettijohn, the father of the three brothers mentioned, who originated the article and commenced its manufacture at San Francisco in 1877, since which time he has continued to manufacture and sell the product under his own name and under various trade-names, and that Eli Pettijohn instructed his sons in the manner of making such product, and suffered and permitted them to make and sell the same at divers times and places for his and their benefit; that, at the time of the organization of the appellee, Eli Pettijohn was part owner in the Pettijohn Manufacturing & Milling Company, which operated a mill at Oakland, Cal., manufacturing and selling rolled wheat under the trade-names of "Pettijohn's Breakfast Food" and "Pettijohn's Breakfast Pearls"; that Eli Pettijohn first applied the name "Pettijohn" to rolled wheat in 1877, in San Francisco; that he continued to sell the product under the name of "Pettijohn's Rolled Wheat" until the year 1880; that in 1884 he resumed the manufacture of rolled wheat in San Francisco under the name of "Pettijohn's Pearled Rolled Wheat," which was afterwards changed to "Pettijohn's Breakfast Gem," and that he continued the manufacture and sale of the product under that name until September, 1889; that in February, 1892, Eli Pettijohn again resumed the manufacture and sale of that product in San Francisco, and so continued until November, 1892, when he removed to Oakland, and there manufactured the same product, and sold it under the name of "Pettijohn's Breakfast Gem," "Pettijohn's Breakfast Food," and "Pettijohn's Breakfast Pearl"; that such wheat product had acquired a wide and valuable reputation under the name of "Pettijohn," and was in good demand in all that part of the United States west of the Rocky Mountains, and that this reputation was created and acquired by and through the efforts of Eli Pettijohn; that in September, 1889, William A. Pettijohn, his son, who was associated with him in business, sold to one Laumeister, of San Francisco, the right to make and sell rolled wheat under the name of "Pettijohn's Breakfast Gem," together with a certain interest in the business of Eli and William A. Pettijohn, and that Laumeister has since that date, and particularly since he acquired the entire interest of that concern, manufactured and sold rolled wheat under that name not only west of the Rocky Mountains, but also in the city of New York, and that the

name "Pettijohn," used in connection with rolled wheat prior to the incorporation of the appellee, did not refer exclusively to the product of the appellant and his predecessor, but referred to the product made by Eli Pettijohn in San Francisco, by the Pettijohn Manufacturing & Milling Company in Oakland, and by Laumeister manufacturing both at San Francisco and in New York; and that the name was and is descriptive of the product, and indicated rolled wheat prepared by the Pettijohn process. The answer further states that Eli Pettijohn has been connected with the appellee as stockholder and director, and except for about six months, when he was absent in California, he had always been in advisory relations with, and in supervision of the product manufactured by, the appellee; that Eli Pettijohn's process consisted in subjecting wheat for food purposes to the roller process in such condition as to flatten, but not disintegrate, the grain; that prior to the year 1877, when the thought was conceived by Eli Pettijohn, no similar product of wheat had ever been made or sold.

The suit was brought in the superior court of Cook county, Ill., and thence removed into the circuit court of the United States for the Northern district of Illinois, and on the 28th day of March, 1896, an order was entered dissolving an injunction pendente lite issued in the cause while it was pending in the state court. From that order this appeal is taken. The opinion of the court below will be found recorded in 72 Fed. 903, to which reference may be had for a fuller statement of the facts.

W. H. Swift, for appellant.

Frank F. Reed, for appellee.

Before WOODS and JENKINS, Circuit Judges.

JENKINS, Circuit Judge, after the foregoing statement, delivered the opinion of the court.

An interlocutory injunction operates somewhat in the nature of judgment and execution before trial. Without question, it is at times an appropriate remedy in the prevention of great wrong, but to authorize its issuance there must exist a pressing necessity. The right to it must be clear, and the apprehended injury must be grievous, and generally, where the injury may be measured in money, the alleged wrongdoer should be shown to be unable pecuniarily to respond. Without considering the many and interesting questions discussed at the bar, it is sufficient at this time to say that upon the evidence produced we are of opinion that the right of the appellant to the exclusive use of the name "Pettijohn" is not so clearly shown that we would be warranted in overturning the discretion lodged in the court below upon granting, refusing, or dissolving the writ. The product in question would appear to have been first manufactured and put upon the market in California in the year 1877 by Eli Pettijohn, under the name of "Pettijohn's Rolled Wheat." Subsequently, and from May, 1884, it was sold under various names by Eli Pettijohn and his son William, or by one of them, and by their successors, or the successors of one of them, as "Pettijohn's Breakfast Gems," "Pettijohn's Breakfast Pearls," or "Pettijohn's Breakfast Food." The name "Pettijohn" seems to have been first connected with the product by Eli Pettijohn, the father, who was engaged in the manufacture and sale of the product in the state of California intermittently from the year 1877 down to the autumn of the year 1892. During all these years the name "Pettijohn" was applied to the product, whether manufactured by the father or by

the son, or by the successors of both or of either of them. The appellant claims title to this name, as applied to this product, through grant by the son; the appellee, through grant by the father. It is left doubtful by the evidence whether the father ever parted with his right to such use of that name, and whether the son ever acquired the exclusive use thereof, in the manufacture and sale of this breakfast food, and whether they were not both entitled to such use of it as tenants in common, so to speak. The right being thus clouded with doubt, it was no abuse of discretion to dissolve the injunction. Cross-examination in the ordinary course of judicial proceedings may dispel the doubt now existing, and may make clear that which is now obscure. The appellant should not, therefore, be allowed this extraordinary writ, when it can be fully compensated in damages for the injury sustained if it should eventually be decreed to be entitled to relief. In affirming this order, as we are compelled to do, we disclaim any intent to determine this controversy, withholding expression of an opinion upon the merits until the cause shall come here upon final decree. The order will be affirmed.