CHARLES E. HIRES CO. v. CONSUMERS' CO.

(Circuit Court of Appeals, Seventh Circuit. March 22, 1900.)

No. 645.

**1. UNFAIR COMPETITION—IMITATION OF FORM OF PACKAGE.**

Where a manufacturer of root beer adopted a new and peculiar form of bottle, by which, principally, its product became known and recognized by consumers, the intentional imitation of such form by a competing manufacturer commencing business subsequently, for the purpose of deception, in itself constitutes unfair competition, against which the original user is entitled to an injunction.[1]

**2. SAME—PROPER PROCEDURE ON GRANTING INJUNCTION.**

It is not a proper function of a court of equity, after having found that a defendant has been guilty of unfair competition, by deliberately and designedly imitating the packages and labels of a business competitor, to give its approval in advance to a changed form proposed to be adopted by defendant to avoid future liability; but it should in such case restrain the use of the infringing devices, leaving to the defendant the responsibility of deciding for himself, and at his own risk, what changes are necessary to avoid infringement.

**3. APPEAL—REVIEW OF ORDER GRANTING PRELIMINARY INJUNCTION.**

While the granting or refusing of a preliminary injunction is largely discretionary, the provision of the act creating the circuit courts of appeals, allowing appeals from such orders, is for the very purpose of having such discretion reviewed, and errors in its exercise corrected; and where the court below has found a defendant guilty of unfair competition, practiced deliberately and designedly, and has granted an injunction for the protection of complainant's rights as it found them, but fell short in its judgment as to the extent of such rights, its error will be corrected on appeal, and its injunction broadened to afford the full measure of relief to which the complainant is entitled.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The appellant, the Charles E. Hires Company (the complainant below), brought its bill to restrain an alleged unfair competition in trade by the appellee (the defendant below). Upon an application for a preliminary injunction the facts disclosed are thus succinctly and accurately stated by the counsel for the appellant:

"The Charles E. Hires Company, complainant, is a Pennsylvania corporation engaged in the manufacture and marketing of root beer in various forms. The Consumers' Company is an Illinois corporation originally manufacturing distilled waters and soda, and more recently ginger ale, birch beer, root beer, and other effervescent beverages. The predecessor of complainant inaugurated the manufacture and marketing of root beer in 1877 by putting on the market a dry preparation known as 'Hires' Improved Root-Beer Package,' from which root beer was obtained by a simple process. To this was added in the ensuing year a preparation known as 'Hires' Root-Beer Extract,' from which, by the addition of water and yeast, root beer was easily made, ready for consumption. In 1890 the complainant corporation succeeded to the entire business and rights of Charles E. Hires, and continued the manufacture of the root-beer package and the root-beer extract. In 1895 complainant added to its former products carbonated root beer put up in bottles ready for consumption. In each instance the complainant or its predecessor was the pioneer introducer of the article, and at the time complainant began the manufacture and sale of carbonated root beer there was no similar preparation on the market. A new, pecul-

---

[1] As to unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

iar, and distinctive form of bottle was adopted for the new beverage, cylindrical in form, with high shoulders and short neck. Corks wired and covered with tin foil were originally employed as stoppers. The labels at first were three in number; consisting of a band label around the bottle neck; a small, round, gilt intermediate label; and a larger label near the bottom of the bottle. After about a year of use the small intermediate label was changed to the form of a shield, and some slight modifications made in the neck label; and in 1896 complainant began the substitution of tin capsules or crown stoppers for the ordinary corks, and during the season of 1896 a .complete change in this particular was effectuated. The intermediate label, which was at first a round gilt disk, and subsequently a shield, bore the direction: 'Keep this bottle on its side in a cool place. Sparkling. The genuine has the signature of the Charles E. Hires Co.' But, it having been found that the use of the tin capsules obviated the necessity of this method of preservation, the admonition was unnecessary, and the intermediate label was in 1897 wholly discontinued upon the bottles; but advertisements which reproduced bottles showing this label continued in use, and are still employed. Complainant has largely advertised its carbonated root beer. The advertisements are chiefly in the form of fancy cards, booklets, and hangers, which, in the majority of instances, exhibit a reproduction of the bottle and labels; but, as in many instances the reproductions are small, the peculiarities of the label are not decipherable, and the distinctive style of the .bottle is the chief feature, and most conspicuously noticeable. .The beverage proved a popular one, and a large market was soon created. The public calls for it by the name of 'Hires' Root Beer,' and identifies it both by the shape of the bottle, and by the general appearance of the labels; but the shape or style of the bottle is the principal method of identification by the purchaser at retail. After complainant's beverage had become well established upon the market, the defendant began the manufacture of various effervescent beverages, including ginger ale, birch beer, and root beer. It at first adopted a form of bottle for these three beverages very distinct, in size, shape and form, from the bottle employed by complainant, and also adopted labels widely different in size, color, and general get-up. Defendant's bottles for these three beverages were identical in shape, size, form, and general appearance, and the labels were identical in shape, size, position, and the letter press thereon, save the necessary difference in name, and a separate color in the labels. The labels for all these articles had pale-green backgrounds, but the colors of the lettering and label margins differed, so that root beer, ginger ale, and birch beer could be distinguished; the letter press and margin colors being red for root beer, light brown for ginger ale, and brown for birch beer. At the beginning of 1897, the season following a similar change by complainant, the defendant also adopted the tin capsule or crown stopper for bottles containing all its beverages, but continued the use of the original bottles and labels until the season of 1899. At this time defendant, without any reason except an asserted desire to increase the capacity of its root-beer bottles, abandoned for root beer the form of the bottle theretofore used by it for birch beer, ginger ale, and root beer, and adopted for root beer alone a bottle precisely identical with that which had been used by the complainant from the commencement. Defendant also changed the size, shape, color, and position of its root-beer labels so as to approximate those of complainant's."

The complainant prayed an injunction:

"That the said defendant, its officers, agents, servants, and employés, may be enjoined and restrained, at first during the pendency of this suit, and afterwards perpetually, from manufacturing, putting up, selling, advertising, offering, or announcing for sale, or supplying, root beer, or any similar preparation, manufacture, or beverage, in bottles and under labels substantially identical with or like the said bottles and labels of your orator employed for that purpose, or substantially identical with or like the bottles and labels now employed by the defendant for that purpose, or in bottles or under labels which are calculated to deceive purchasers and consumers into the belief that the beverage is the product of your orator, or which will enable others to substitute, sell, or palm off the said beverage of the defendant as and for the beverage of your orator."

Upon the hearing of the motion the court below handed down the following opinion:

"On this motion for an injunction I am not disposed to consider the shape of the bottle as a controlling means of deceiving the public; but the changes made by the defendant in the style of its labels, and the marked similarity thereof to the ordinary observer to the labels used by complainant, when taken in connection with the shape of the bottle, certainly furnish grounds for the belief that the defendant's actions in the premises were with a view of causing its product to be mistaken for, and sold in lieu of, complainant's. Unless, therefore, defendant so materially alters its present labels within the next ten days, in color, shape, and style, that its bottles, when adorned by such labels, shall present to the ordinary observer a marked and distinct difference in appearance from the packages of the complainant, a preliminary injunction will be granted. It is required that counsel for the defendant assure the court that no bottles of the shape in controversy, supplied with the present labels, shall be distributed after the 29th of July, 1899, and that no bottles not already labeled shall be supplied with the present labels after this date."

Thereafter the defendant submitted to the court a changed label for its bottles, and the court entered the following order:

"The motion of the complainant in this cause for a temporary injunction coming on for a further hearing, it is ordered that the said defendant, its officers, agents, servants, and employés, be, and they are hereby, enjoined and restrained, until the further order of this court, from selling, advertising, offering or announcing for sale, or supplying, root beer, in bottles and under labels identical, or substantially identical, with the bottles and labels thereon, annexed to the complainant's bill in this cause, marked 'Exhibit E,' or in bottles and under labels which are calculated to deceive consumers and purchasers into the belief that the root beer sold or furnished by the defendant is the product of said complainant, or which will enable others to substitute, sell, or palm off the root beer of the defendant as and for the root beer of said complainant. This order, however, shall not be construed as restraining or enjoining the said defendant from selling, advertising, offering, or announcing for sale root beer in bottles and under labels identical, or substantially identical, with defendant's Exhibit X, this day filed in this cause. And the court denies the complainant's motion in so far as it prays for relief beyond or in addition to that given by the foregoing order."

This Exhibit X shows a bottle identical in form with that used by the complainant. From this order, so far as it denied the full relief sought by the complainant, an appeal is taken to this court.

Frank F. Reed, J. Willis Martin, and Francis Rawle, for appellant. John P. Wilson, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge (after stating the facts as above). The court below seems to have placed its refusal to extend its injunction to include the bottle used by the defendant upon the notion that one has the right under all circumstances to use any form of bottle he may desire. It is true that no one has a monopoly of form, nor has he a monopoly of color, of the shape of letters, of geographical names, or of his own name. An action like the present proceeds upon no such ground, but upon the principle that one may not, by means lawful in themselves when devoted to a lawful end, perpetrate a fraud upon the public, or infringe the rights of another. The doctrine is not novel in this court. We have held that one may not use his own name to

work a wrong (Meyer v. Medicine Co., 18 U. S. App. 372, 7 C. C. A. 558, 58 Fed. 884; Pillsbury v. Mills Co., 24 U. S. App. 395, 12 C. C. A. 432, 64 Fed. 841), or a geographical name for like purpose (Mills Co. v. Eagle, 58 U. S. App. 490, 30 C. C. A. 386, 86 Fed. 608, 41 L. R. A. 162). One may not use the color that another has selected as a distinguishing mark of his goods, or use the same arrangement of letters and of marks, when such use is with the design to market his goods as the goods of another, and so to work a fraud. The principle is settled doctrine in this court, and need not be enlarged upon. Here the defendant used a bottle for the different beverages manufactured by him which was distinctive, and wholly unlike the form of bottle used by the complainant in marketing its root beer. The defendant, as to root beer, but not as to its other beverages, substituted for the bottle used one identical with the form of bottle used by the complainant. It is said that this was done so that a bottle might contain two full glasses of the beverage. This excuse is pretentious, merely. The bottle could have been enlarged without change of form. It was said at the bar that this act was a mistake on the part of the defendant. This is a charitable view of the act, but is in fact erroneous. It was not a mistake. The act was deliberate and designed. Its purpose, clearly, was to adopt the form of package previously adopted by the complainant. Otherwise, the defendant, for the purpose declared by it, would have employed like form of bottle for its other beverages, with respect to which the complainant was not a competitor in trade, or would have enlarged the capacity of the bottle without changing its form. The court below found—and its ruling in that regard is not here complained of—that the defendant changed the earmarks upon its packages of root beer so as to approximate in marked similarity the label of the complainant. All this evidences design. And that such was the case finds some support in the fact that the defendant, also manufacturing ginger ale, advertised to dealers "Consumers' Special or Belfast Formula as Desired Crown Cork," "Round Bottom Belfast Style and Belfast Formula." If this signifies anything, it means that the defendant would furnish ginger ale in the inconveniently shaped bottle used by the Belfast manufacturers for their ginger ale, which has a high reputation, and is known to the 'public by the ungainly shaped bottle which contains it. It is clear that here was deliberate imitation of the complainant's form of package, and, as the court below found, deliberate imitation of the complainant's trade-mark and label upon it. The obvious purpose and the manifest result of this piracy were to enable retail dealers to palm off upon the public the goods of the defendant as the goods of the complainant. That wrong could not be prevented by the partial restraint imposed by the court below. It was proven that the complainant's root beer was principally known to and recognized by consumers from the peculiar form of bottle. It was this distinguishing feature which caught the eye, and abided prominently in the memory. Indeed, the court below declared in its opinion that the changes made by the defendant in its label tended to deceive "when taken in connection with the shape of the bottle," thus clearly recognizing the fact that the form of the bottle employed was an effective factor in the

deception practiced. Any restraint, therefore, that did not include the form of bottle, would be ineffective to stay the wrong.

The court below, upon holding that the changed label of the defendant infringed the complainant's right, caused to be submitted for its approval another form of label, which it approved, and authorized the defendant to use upon bottles of the same form as those used by the complainant. We greatly doubt the propriety of such action. When an infringement has been found, it should be restrained. A court of equity does not sit as an arbiter to determine in advance upon other and changed labels which the infringer may adopt to avoid the condemnation of the court. Whether such changed forms do in fact infringe is matter of fact to be determined by the court in its usual course of procedure upon complaint lodged by the party damnified. The duty of the court below was to determine whether the labels complained of in the bill infringed the complainant's right. That duty was fully performed when the court had so determined. It is not called upon to decide whether a new label proposed for adoption would infringe. This is especially so here, where the infringement was deliberate and designed. In such case the court ought not to say how near the infringer may lawfully approximate the label of the complainant, but should cast the burden upon the guilty party of deciding for himself how near he may with safety drive to the edge of the precipice, and whether it be not better for him to keep as far from it as possible.

It was urged that a preliminary injunction is largely discretionary, and that that discretion should not be controlled by us. The act creating this court provides for appeals from such orders or decrees for the very purpose of reviewing that discretion and correcting error in its exercise. It is true that the restraint interposed was temporary,—not determining the ultimate rights of the parties, but merely regulating their conduct until final hearing. It is also true that a preliminary injunction ought not to issue unless the right be clear, and the infringement be proven. We have spoken to this subject with no uncertain sound. Standard Elevator Co. v. Crane Elevator Co., 9 U. S. App. 556, 6 C. C. A. 100, 56 Fed. 718; American Cereal Co. v. Eli Pettijohn Cereal Co., 46 U. S. App. 188, 22 C. C. A. 236, 76 Fed. 372. Our ruling in the case at bar is well within the principle of those decisions; for here the right is clear, the infringement proven, and but thinly disguised. It will be impossible to give compensation in damages; for, from the very nature of the case, it will be wholly impracticable to ascertain the extent to which the piracy upon the complainant's right has been or may be carried, or to what extent the product of the defendant has been or may be palmed off upon the public as the product of the complainant. Complete relief can only be afforded by restraint of the infringement. Besides, the court below found nothing in the circumstances or situation of the parties to stay its hand. It issued its writ of injunction according to their rights as it determined them. It fell short in its judgment of the extent of those rights. The writ was clearly intended by the court to go to the full extent of the infringement, and was not controlled by other considerations. The defendant is not deprived of the

right to market its root beer, but, at its peril, must see to it that its product is not dressed in the clothes of another. We may aptly conclude with the happy suggestion of Judge Lacombe in Grocery Co. v. Sloan (C. C.) 68 Fed. 539, 540, that, "in the period of rest and quiet which will be secured by a temporary injunction, possibly defendants may renew their strength sufficiently to be able to get further away from"—the complainant's form of bottle—"the next time they try to strictly differentiate their own goods." The order or decree is reversed, and the cause remanded, with directions to the circuit court to issue its writ of injunction pursuant to the prayer, and in the terms of the bill.