ENOCH MORGAN'S SONS CO. v. WHITTIER–COBURN CO.

(Circuit Court, N. D. California. August 18, 1902.)

No. 13,012.

1. TRADE-NAMES—INFRINGEMENT—"SAPOLIO."

The word "Sapho" sufficiently resembles "Sapolio" to constitute an infringement of the latter as a trade-name, where it is used as the name of a similar article, put up in packages which are identical in form, size, and color of wrapper, and having a label in similitude of that used on packages of Sapolio.

2. SAME—UNFAIR COMPETITION—IMITATION OF PACKAGES.

It is within the discretion of the court to enjoin an imitation of another's goods in the matter of form, color, or lettering of packages when it is proven directly, or by strong inferential evidence, that the imitation was willfully made, or when such imitation, though innocently made, results in damage to the one whose rights are infringed.

3. SAME.

A manufacturer who so dresses his goods as to enable retail dealers to sell them to customers as those of a competitor earlier in the market is chargeable with unfair competition, although he is careful himself to sell them as his own.

In Equity. Suit for infringement of trade-name and for unfair competition.

Archibald Cox and Wright & Lukens, for complainant
Lloyd & Wood, for defendant.

MORROW, Circuit Judge. This is a suit in equity brought by the complainant, a corporation existing under the laws of the state of New York, to protect its trade-mark and trade-name "Sapolio," and to restrain the defendant, a California corporation, from certain acts of unfair competition. It is alleged that many years ago the firm of Enoch Morgan's Sons, in New York City, prepared and put upon the market a superior manufacture in the shape of a soap especially designed for cleansing, scouring, and polishing, and appropriated, applied thereto, and used as a trade-mark and trade-name to distinguish and identify their said manufacture the word "Sapolio"; that the said firm also originated and devised a radically new and distinctive form or style of package for said "Sapolio," of unusual size, color, and shape, in connection with such manufactures, in order that the said "Sapolio" might be more readily recognized by consumers and the public, and become more widely and generally known and more effectually popularized; that many thousands of dollars were expended by said firm in advertising and placing upon the market said manufacture, resulting in the creation of a large demand for the said "Sapolio." It is further alleged that on or about the 4th day of November, 1876, the complainant herein succeeded to all the right, title, and interest of the said Enoch Morgan's Sons, and has continued to carry on the said business ever since, though in a greatly enlarged and extended form, including the use of the trade-mark "Sapolio" and the distinctive form of package indicating that product; that for a period

¶ 2. Unfair competition, see notes to Scheuer v. Miller, 20 C. C. A. 165; Lare v. Harper, 30 C. C. A. 376.

of more than 30 years the complainant and its predecessors have been in the sole and exclusive use of said trade-name and style of package, and the right to such use has become of great value to complainant. The defendant is charged with infringement of complainant's rights in the use of said package and trade-mark, and with inequitable competition in business, in that it has fraudulently prepared and sold a cleaning and polishing substance in imitation of complainant's manufacture, with form and wrapping in simulation of that used by complainant, and applied thereto the descriptive title "Sapho." It is alleged that the defendant's preparation is easily mistaken for that of the complainant, and that the substitution therefor, whether by design or mistake, results in great loss and injury to complainant. The defendant denies generally the charges of the bill, and avers that its acts in connection with the product "Sapho" have been entirely fair, and in legitimate competition with the business of complainant.

It appears from the evidence that the complainant's predecessors coined and adopted the word "Sapolio" in 1869 as a trade-name for the scouring soap prepared by them, and that the name has been used as a trade-mark for such preparation continuously since that time. It is not denied that the said name and product to which it is attached have become of great value to complainant, and that it is entitled to such protection of its rights therein as the law affords. The controversy therefore presents two questions for determination: Does the word "Sapho," as applied by defendant to its product, infringe the rights of complainant in and to its trade-name "Sapolio"? And have the defendant's acts in preparing and placing upon the market the said "Sapho" soap constituted unfair competition in trade? The determination of the first question necessarily involves a consideration of the second, and the two will therefore be dealt with together.

The acts constituting infringement of a trade-mark cannot be specifically defined in form applicable to all cases, and general rules only can be resorted to for the guidance of the courts in determining the existence or nonexistence of infringement. The supreme court of the United States, in the case of McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828, in this connection states:

"It is safe to declare, as a general rule, that exact similitude is not required to constitute an infringement or to entitle the complaining party to protection. If the form, marks, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device, is such as would be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose that he was purchasing the genuine article, then the similitude is such as entitles the injured party to equitable protection, if he takes seasonable measures to assert his rights, and to prevent their continued invasion."

And further in the decision, emphasizing this opinion, it says:

"Two trade-marks are substantially the same in legal contemplation, if the resemblance is such as to deceive an ordinary purchaser, giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one supposing it to be the other."

In applying the test furnished by this rule, the question becomes one of fact, to be deduced from the evidence.

It appears that the defendant was for many years the agent of the complainant in marketing "Sapolio," and was therefore familiar with the salability of the complainant's product. About the time of terminating this agency the defendant commenced the manufacture of the alleged infringing product, "Sapho" soap, of size and shape identical with that known as "Sapolio," and bearing the imprint of the name, and owner in similar style, as appears by the following fac similes of the two products:

The complainant's packages were wrapped in paper having the appearance of silver, while lengthwise around this wrapper was placed a band of dark blue paper, bordered with two narrow gilt lines, there appearing within the borders certain collocations of words, as represented by the following:

The defendant wrapped its packages in the same kind of paper, placed lengthwise around the wrapper a band of very dark-colored paper, of the same width as that used by complainant, bordered with the two narrow gilt lines, and containing collocations of words arranged in similar position to those of complainant's packages, as illustrated by the following:

The labels placed upon the boxes in which the packages were packed for delivery to dealers were also of the same colors, and similar in arrangement of letters. For about one month sales were made by the defendant of their product so prepared, when it was learned that objection was being made by the complainant to the wrapper label. The defendant consulted its attorney, and upon his advice designed new labels for the wrappers, removed the old ones from the packages on hand, and substituted the new in place thereof, also changing the color of the box labels. The complainant contends, however, that it is entitled to an injunction against the use of the former labels, regardless of their present discontinuance by defendant, and that the defendant should be restrained from the use of the word "Sapho" in connection with a scouring soap, and from the use of any package calculated to deceive.

In the opinion of the court, the first labels and style of wrapper were so closely in imitation of those used by the complainant (which by extensive advertising and the virtues of the product had become of great value) as to constitute the counterfeiting of an article with a reputation already established, and therefore a violation of complainant's rights in its trade-mark and trade-name.

The labels now in use by the defendant are the following:

As will be observed, the color of the paper is the same and the width of the band. A solid gilt line is substituted for the two narrow ones, but occupying the same space and inclosing the lettering in exactly the same manner as the two lines of the former labels. The scroll is removed from the words "Scouring, Polishing, and Cleaning," and those words placed in a straight line instead of a curve, and in reversed position. In place of the words "Manufactured by" the word "Soap" appears. No other differences are apparent. The packages of defendant's product are still of the same size and form as those of complainant; they are still wrapped in the silver-colored paper, and at a distance of a few feet present a remarkably similar appearance to the well-known packages of "Sapolio." The word "Sapho," commencing and ending with the same letters as "Sapolio," and arranged in the same position upon the packages of soap, presents so similar an appearance to the eye in an ordinary glance that, in my opinion, it could easily be mistaken for "Sapolio." A minute and careful inspection will, of course, reveal the fact that it is a different preparation; but, in legal contemplation, infringement occurs when "the resemblance is such as to deceive an ordinary purchaser giving such attention to the same as such a purchaser usually gives." McLean v. Fleming, supra; Sterling Remedy Co. v. Eureka Chemical & Mfg. Co., 80 Fed. 105, 25 C. C. A. 314; Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 41, 21 Sup. Ct. 7, 45 L. Ed. 60.

While it is true that no one has a monopoly of form, of color, or of the shape of letters, it has repeatedly been held that one may not use the color that another has selected as a distinguishing mark of his goods, or use the same arrangement of letters and of marks, when such use is with the design to market his goods as the goods of another. Hires Co. v. Consumers' Co., 100 Fed. 809, 41 C. C. A. 71. It is within the discretion of the court to enjoin such an imitation of another's goods, when it is proven directly or by strong inferential evidence that the imitation was willfully made, or when such imitation, even though innocently made, results in damage to the one whose rights are infringed. In the present case the evidence shows that the goods of the defendant have been mistaken by purchasers for those of the complainant, probably by the design of the dealer. And, though there is no evidence connecting such dishonest dealing with the defendant in any way, the fact that it so dresses its goods as to give an easy opportunity to the unscrupulous dealer to delude the consuming purchaser is very persuasive evidence that an intention existed to enter into competition with the manufacturer whose goods were already well established, and to carry on such competition in a manner which courts of equity hold to be unfair. In the case of Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 77 Fed. 869, complainant introduced to the public a soap powder under the title of "Gold Dust," and devised a distinctive form of package to contain the powder. It expended upward of $300,000 in advertising this article, and thereby created a large demand for it throughout the United States. The defendant later introduced a similar preparation to the public, packed in boxes resembling those of the complainant in size, form, and coloring, but

having the name "Buffalo" in place of "Gold Dust." This preparation was offered to the trade at a lower price than that of the complainant, and proved a sharp competitor. It was shown that no effort was ever made by the defendant or its salesmen to deceive customers by inducing them to purchase the defendant's goods believing them to be those of the complainant, but the court held that in equity the consumer should be regarded as well as the middleman. It was shown that in many cases when consumers asked for the complainant's goods the dealers would hand them those of the defendant, and that by reason of the close resemblance in general appearance of the packages most customers were deceived. The court said:

"It may be conceded that the defendant never, by any of its officers or agents, intimated to its salesmen that they should recommend the defendant's packages as being readily disposed of to consumers who asked for and wished to have complainant's. But such oral commendation was certainly unnecessary. A survey of the two packages, placed side by side, would sufficiently suggest this possibility to a dishonest dealer. We have, then, the case of a manufacturer who is careful always to sell its goods as its own, but who puts them up in a style of package so similar to that used by one of its competitors, earlier in the market, that unscrupulous dealers, who purchase from the manufacturer in order to sell at retail to consumers, are enabled to delude a large number of such retail purchasers by palming off upon them the goods of the manufacturer as those of its competitor. That this is unfair competition seems apparent, both on reason and authority. In a similar case the court says: 'It is argued that the defendant has nothing to do with the deception of the public. The answer is obvious. Every person who, intending to buy a bottle of the plaintiff's sauce, gets, instead, a bottle of the defendant's, is a customer taken from the plaintiff by this deceit, and, if this is extensively done, the damage to the plaintiff's trade would be serious. Powell v. Brewery Co. [1896] 1 Ch. 88.' See, also, Read v. Richardson, 45 Law T. (N. S.) 54; Brown v. Mercer, 37 N. Y. Super. Ct. 265; Manufacturing Co. v. Loog, 18 Ch. Div. 412; Lever v. Goodwin, 36 Ch. Div. 1. In the latter case the rule is well stated, as follows: 'It has been said more than once in this case that the manufacturer ought not to be held liable for the fraud of the ultimate seller; that is, the shopkeeper or the shopkeeper's assistant. But that is not the true view of the case. The question is whether the defendants have or have not knowingly put into the hands of the retail dealers the means of deceiving the ultimate purchasers.' "

The case at bar presents even stronger evidence of unlawful imitation than the case just cited; for here not only are the form, size, color, and manner of lettering of the packages similar, but the name adopted as a distinguishing feature by complainant is also readily confused with that of the competing manufacturer, and there is really no differentiation in the general appearance of the two preparations.

It follows that the rights of the complainant in and to its trade-name are infringed by the acts of the defendant, and that the imitation of complainant's packages by defendant is unlawful, in that it tends to create confusion in the trade, and work a fraud upon the public by inducing it to accept the goods of defendant for those of the complainant.

Let a decree be entered in accordance with this opinion.