AMELIA MILLING CO. v. TENNESSEE COAL, IRON & R. CO.

(Circuit Court, N. D. Georgia.   May 13, 1903.)

No. 11.

1. JURISDICTION OF FEDERAL COURTS—AMOUNT IN DISPUTE.
    The amount involved, for jurisdictional purposes, in a suit to enjoin the maintenance of a nuisance, cannot be measured solely by the damage suffered by complainant, nor by the actual outlay of money which defendant would be required to make if the relief should be granted, but the value of the right of which he is sought to be deprived is to be taken into consideration.

2. PRELIMINARY INJUNCTION—GROUNDS—SUFFICIENCY OF SHOWING.
    A preliminary injunction will not be granted against the use by defendant of ore washers and a pumping station, alleged to be nuisances, the effect of which would be to stop the operation of iron mines in which large sums of money have been invested, where the proofs leave the right of the matter uncertain, and the injury to defendant from the granting of the injunction would be far greater than the damages to plaintiff from a continuance of the work.

In Equity.   On motion to remand to state court, and motion for a preliminary injunction.

J. W. & P. F. Aiken, for complainant.

Walker Percy and J. M. Neil, for defendant.

PARDEE, Circuit Judge.   This bill was filed in the superior court of Bartow county, state of Georgia, and was removed to this court on a sworn petition showing diverse citizenship, and that the matters in dispute in said bill exceed in value the sum of $2,000, exclusive of interest and costs; and, further, that the rights and privileges of the defendant, of which the said plaintiff by said bill seeks to deprive the defendant, specifically setting forth the same, are of the value of not less than $5,000.   In this court the complainant moves to remand, because the amount involved is not sufficient to give this court jurisdiction. The bill was brought to restrain sundry alleged nuisances, and for damages.

It appears that the complainant is engaged in the milling business, and, in connection with its mill, owns and operates a spur railroad track; and that in the mill, railroad track, and business many thousands of dollars have been invested.   The defendant owns and operates on its own and leased lands brown-ore mines, and in its business uses blast furnaces, pumping stations, pipe lines, reservoirs, and mud dams, all connected and used in the matter of mining, and in which many thousands of dollars have been invested.

The bill complains of several distinct alleged nuisances, as follows: (1) That there is a dirt road used by the traveling public to and from complainant's mill, and that the defendant's present pumping station is located on or so near to this road that the noise and other operation

¶ 1. Jurisdiction of circuit courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.

¶ 2. See Injunction, vol. 27, Cent. Dig. §§ 307, 309.

of the pumping station alarm passing teams, hindering and deterring customers from coming to and going from complainant's mill. (2) That the defendant proposes to increase the output from its ore mines, and to that end proposes to construct, and has in fact commenced the construction of, an additional pumping station in the immediate vicinity of the pumping station now in use, all of which, by reason of its operation and noise, etc., will still further prevent customers from using the road to complainant's mill. (3) The bill claims that defendant in its ore-washing operations has allowed, and still allows, mud and muddy water to be deposited upon another road leading to its mill, and has dammed up and prevented the use of such road. (4) The bill claims that defendant has allowed mud and muddy water to wash down against, and injure and damage, a trestle on which complainant's railroad passes over the stream called "Galt's Branch," alleging that, as a result, from the mud and muddy water escaping from defendant's dams, this trestle has on two occasions been washed away.

The complainant prays for relief as follows: (1) For a judgment against the defendant for $1,000 damages suffered before the filing of the suit; (2) that the defendant and its agents be enjoined pendente lite from maintaining and operating the pump and boiler and pumping station existing as aforesaid, and from erecting, maintaining, or operating a new pumping station within 100 yards of either of said roads, and from using either of said pumps, boilers, or pumping stations to make violent and terrifying noises; (3) that the defendant be enjoined, pendente lite and permanently, from maintaining mud ponds, and mud dams or mud dikes, and from putting or emptying mud or muddy water from defendant's lands, or into, or upon and into, any branch, slough, or depression whereby the same might be and naturally would be washed down upon said plaintiff's land, or against its trestle, or in and upon either of said roads, and from operating any iron-ore washers in such a manner that mud or muddy water runs therefrom, so that the same would naturally run upon plaintiff's lands or trestle, or either of said roads, and from depositing mud or muddy water at any place where, by reason of any sort, said mud or muddy water would naturally and in the course of nature, and according to the laws of gravitation, be washed or flooded in or upon any of said roads, in or upon or against said trestle, or in or upon or into any branch or slough or natural depression crossing either of said roads, or upon said plaintiff's lands.

On this motion complainant has submitted numerous affidavits, to the effect that the damage resulting to the defendant by reason of being compelled to remove the present pumping station, and build the proposed pumping station within the limits said to be necessary in the bill, will not exceed in amount $350 to $500. It has submitted no affidavits in regard to the cost resulting to the defendant in case it should be required to hereafter comply with complainant's demands in regard to mud dams, muddy water, and otherwise in its mining operations. In addition to the averments in the sworn petition, on which the case was removed, as to the amount involved, the defendant has submitted numerous affidavits to the effect that, to comply with the demands of the complainant in regard to the location of its pumping

stations and the operation of its mud dams, dikes, etc., including the additional cost for additional pipe and relaying of old pipe, would largely exceed the sum of $2,000.

On the case as thus presented, it seems clear that the amount involved in this case, without considering at all the question of the right of the defendant to manage and operate its own property as it may deem advisable, exceeds the sum of $2,000. But aside from these affidavits, on the allegations of the bill in connection with the answer already filed, the amount involved is sufficient to warrant the removal of the case. It would seem to be clear that the amount involved cannot be measured solely by the damage suffered by the complainant, nor by the actual moneyed outlay of the defendant in case he should be prevented and regulated in the use of his own property. See Mississippi & Missouri R. R. Co. v. Ward, 2 Black, 485, 492, 17 L. Ed. 311; Whitman v. Hubbell (C. C.) 30 Fed. 81; Texas & Pacific Railroad Co. v. Kuteman, 54 Fed. 547, 4 C. C. A. 502; Rainey v. Herbert, 55 Fed. 443, 5 C. C. A. 183.

This case has also been submitted on a motion to grant an injunction pendente lite, as prayed in the bill. The case shows that the defendant is operating on its own and leased lands the mining of brown ores on a large scale, and has invested in its business tens of thousands of dollars. It further shows that the mining operations are carried on by washing the mined ore, which is carried to washers in the vicinity of the mines, where a stream of water is turned upon the ore, dissolving the earth and carrying it away, leaving the ores residuum; that the defendant has in its mining operations a pumping station located on Pumpkin Vine creek, within a few hundred yards of complainant's mill, which is used to force water from Pumpkin Vine creek to a reservoir constructed on a hill rising from the creek, and from this reservoir the water is transmitted through iron pipe lines to the washing plants, three in number, where the ore is put through the washing process; that below the washers have been constructed by the defendant and its predecessors large dams for the purpose of retaining the muddy water flowing from it until the sediment therein has been deposited. It further appears that the present pumping station has been in operation for two years as now located and that the business transacted by the defendant has resulted in, and if allowed to go on will continue to result in, a large output of several hundred tons of ore daily. An injunction pendente lite is very like an execution before judgment, and ought not to be issued except in clear cases of right. In the present case, on the pleadings and affidavits submitted, it is impossible to say with certainty that the operation of the defendant's pumping station and of its water system is a nuisance at all, or, if a nuisance, one of which the milling company, complainant, has any right to complain.

Aside from this, the injury which would result to the defendant by issuing an injunction in this case, considered in relation to the damages which the complainant may suffer by allowing defendant's operations to continue pending this suit, would be too great to warrant an injunction pendente lite. See 1 Spelling on Injunctions (2d Ed.) §§ 411, 417, 428; American Cereal Co. v. Eli Pettijohn Cereal Co., 76

Fed. 372, 22 C. C. A. 236. The case of Clifton Iron Co. v. Dye, 87 Ala. 468, 470, 471, 6 South. 192, seems to be directly in point, and we quote:

"Counsel have pressed the proposition that mere convenience in the use of its property by the company does not entitle it to pour down upon the appellee's land, and into the stream on its land, the débris from the washers erected by it, and we think the contention is reasonable. But it is not every case of nuisance, or continuing trespass, which a court of equity will restrain by injunction. In determining this question, the court should weigh the injury that may accrue to the one or the other, and also to the public, by granting or refusing the injunction. Wood v. Sutcliffe, 2 Sim. N. S. 162; E. & W. R. R. Co. v. E. T., V. & G. R. R. Co., 75 Ala. 295; C. & W. R. R. Co. v. Witherow, 82 Ala. 190 [3 South. 23]; 1 High on Injunc. § 598; Davis v. Sowell, 77 Ala. 262; Torrey v. Camden R. R. Co., 18 N. J. Eq. 293; McBryde v. Sayre, 86 Ala. 458 [5 South. 791].

"The court will take notice of the fact that in the development of the mineral interests of this state, recently made, very large sums of money have been invested. The utilization of these ores, which must be washed before using, necessitates in some measure the placing of sediment where it may flow into streams which constitute the natural drainage of the section where the ore banks are situated. This must cause a deposit of sediment on the lands below, and, while this invasion of the rights of the lower riparian owner may produce injury, entitling him to redress, the great public interests and benefits to flow from the conversion of these ores into pig metal should not be lost sight of. As said by the Vice Chancellor in Wood v. Sutcliffe, supra, 'Whenever a court of equity is asked for an injunction in cases of such nature as this [a bill to enjoin the pollution of a stream], it must have regard, not only to the dry, strict rights of the plaintiff and defendant, but also to the surrounding circumstances.'"

The motion to remand is denied, and the motion for an injunction pendente lite is refused.