OHIO BAKING CO. et al. v. NATIONAL BISCUIT CO.

(Circuit Court of Appeals, Sixth Circuit. January 21, 1904.)

No. 1,232.

1. TRADE-MARK—PROTECTION—INFRINGEMENT.

The right of the owner of a trade-mark to be protected in the exclusive use thereof is not dependent on the federal statute authorizing registration.

2. SAME—NATURE OF RELIEF—UNFAIR DOMESTIC COMPETITION.

Where the ground for relief in a suit for infringement of a trade-mark was unfair competition in domestic commerce, and the cause of action

¶ 2. Unfair competition, see notes to Scheuer v. Miller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

alleged was an imitation of plaintiff's trade-mark on cartons used in local trade, and there was no allegation that complainant's foreign trade was injured by the acts complained of, the fact that the trade-mark was registered, and that complainant was entitled to protection under the federal statute with regard to foreign commerce, was immaterial.

**3. SAME—EVIDENCE.**

Complainant's "In-er Seal" trade-mark, as known to the public, was printed in white letters on a vivid red background of a peculiar shade, and applied to the ends of cracker and biscuit cartons, in which complainant's goods were packed for sale. Shortly thereafter defendant conceived a trade-mark with the words "Factory Seal" printed on the same-colored labels, which it applied to the ends of similar packages of its biscuits. At the time defendant adopted this trade-mark it knew complainant's crackers were the only ones sold with the red seal on the end of the cartons, and that its trade-marks were liable to deceive careless purchasers. *Held*, that defendant's trade-mark, when so printed and used, was an infringement on complainant's trade-mark, and should be enjoined.

Appeal from the Circuit Court of the United States for the Northern District of Ohio. For opinion below, see 127 Fed. 160.

Thomas A. Banning, Ephraim Banning, and Benjamin C. Starr, for appellants.

Squire, Sanders & Dempsey, Earl D. Babst, and Offield, Towle & Linthicum, for appellee.

Before LURTON and RICHARDS, Circuit Judges, and THOMPSON, District Judge.

RICHARDS, Circuit Judge. In March, 1900, the complainant below, the National Biscuit Company, was engaged in the manufacture and sale of bakery products, consisting of biscuits, crackers, etc. It owned and operated some 75 plants, located in the leading cities of the United States, the products of which were put out in packages or cartons under different factory names, indicating their character and origin. For the purpose of identifying all these products, making them known to the public, and guarantying their authenticity, it adopted an arbitrary design or symbol known as the "In-er Seal" trade-mark for use on its cartons, and at a cost of hundreds of thousands of dollars advertised it throughout this country and the world as the mark by which its goods might be recognized. Except for the use of some green and orange labels, which were soon abandoned, the "In-er Seal" trade-mark was printed in white letters upon a vivid red label with clipped corners, and applied to the ends of the cartons. The trade-mark was registered, the application being filed May 12, 1900. In the latter part of August, 1900, the defendant below, the Ohio Baking Company, was engaged at Cleveland, Ohio, in making and selling bread and cakes. It had been so engaged for 17 years. At this time, having decided to enter upon the biscuit and cracker business, it employed one Miles, a former employé of the National Biscuit Company, and gave him charge as manager of the cracker department about to be established. Within three or four weeks afterwards it began to place its biscuits and crackers upon the market, packed in cartons of substantially the same size as those used by the National Biscuit Company, and in some cases of the same

color, style of ornamentation, and general appearance, all having on
the ends, printed in white letters upon red labels with clipped corners,
a fanciful figure, known as the "Factory Seal" trade-mark, which
the Ohio Baking Company, upon entering the cracker business, for
the first time adopted and began to use. This trade-mark was regis-
tered, the application being filed October 9, 1900. For the purpose
of comparison, the two trade-marks are shown in the following il-
lustrations, the vivid red background being designated by the black
background:

The original suit was brought by the National Biscuit Company to
restrain the Ohio Baking Company and its officers from advertising or
selling its goods in any package having on it the "In-er Seal" trade-
mark or any imitation thereof, or in any package dressed in imitation

of one used by the National Biscuit Company, and for an accounting of the profits made by such unfair competition.

On an application for a preliminary injunction, Judge Wanty restrained the defendant below, first, from using the "In-er Seal" trade-mark upon cartons containing its bakery products, as shown in certain exhibits, or advertising or selling its bakery products in cartons containing thereon the "In-er Seal" trade-mark or any imitation thereof; and, second, from putting up and selling or offering for sale the particular cartons shown in certain exhibits, or any other cartons resembling the complainant's cartons as closely as they do. But this was not to be construed as restraining the defendant from selling cartons of the size, weight, and shape of the complainant's, nor from using the respective colors as wrappers, provided they were so differentiated in general appearance as not to be calculated to deceive the ultimate ordinary purchaser. There was an appeal from Judge Wanty's order, and this court reversed the portion respecting the use of the "In-er Seal" trade-mark or any imitation thereof, but affirmed the rest. Upon the return of the case to the Circuit Court, an application was made to Judge Severens for an attachment for contempt against the defendant below for putting out certain cartons in violation of the second part of Judge Wanty's order, but Judge Severens discharged the rule, holding that the cartons did not present a general appearance so closely resembling the complainant's exhibit mentioned in the restraining order as to come within its terms. Afterwards the case came on for hearing before the Circuit Court, Judge Wing sitting, upon the pleadings and proof, and a decree was rendered in favor of the complainant, holding: (1) That the "In-er Seal" trade-mark is a good and valid trade-mark. (2) That the defendants have infringed this trade-mark by putting up and selling bakery products in cartons like those shown in certain exhibits mentioned. (3) That the defendants have violated the complainant's equitable rights in putting up and selling its bakery products in cartons which present a general appearance closely resembling those of the complainant as shown in certain exhibits. (4) That the defendants be enjoined: (a) From imitating the "In-er Seal" trade-mark, or making, handling, or selling cartons of bakery products having thereon any imitation of the "In-er Seal" trade-mark, calculated to mislead or deceive, like those shown in certain exhibits; "but this shall not be construed as restraining defendants from selling cartons or packages of bakery products with their asserted trade-mark thereon, provided such trade-mark is so differentiated in general appearance and application from said complainant's trade-mark that it is not calculated to deceive the ultimate ordinary purchaser." (b) From putting up and selling or offering for sale the particular forms of cartons shown in certain exhibits, or cartons resembling them so closely as to mislead or deceive; but this shall not be construed as restraining the defendants from selling cartons of the size, weight, and shape of the complainant's, but so differentiated in general appearance as not to be calculated to deceive the ordinary purchaser. (5) That the complainant has the right to recover all profits accruing from the violation and infringement of its rights, and that the case be referred to a master to take and report an account of

the damages and profits. From this decree an appeal has been taken to this court.

The right to be protected in the exclusive use of a trade-mark is not dependent on the federal statute authorizing the registration of certain trade-marks. It has been long recognized by the common law and enforced by the chancery courts of England and this country. The use of a trade-mark is to distinguish one's goods. No man has a right to use or imitate the trade-mark of another, and thus represent his goods as the goods of another. However broad the field of competition, it does not include the use of a rival's trade-mark, either directly or covertly, for the purpose of deceiving the public, and marketing his own goods as those of his rival. The one question of fact in this case is whether the "Factory Seal" trade-mark, when printed in white letters upon a red label with clipped corners, and applied to the ends of cartons containing bakery products, bears such a resemblance to the "In-er Seal" trade-mark, when similarly applied, as to deceive the ordinary purchaser, and lead him to believe he is purchasing the goods of the National Biscuit Company, when in fact he is getting the goods of the Ohio Baking Company. McLean v. Fleming, 96 U. S. 255, 24 L. Ed. 828; Manufacturing Co. v. Trainer, 101 U. S. 65, 25 L. Ed. 993; Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847. We have made a careful inspection of the cartons and trade-marks of the respective companies, and are satisfied not only that the "Factory Seal" trade-mark as applied is calculated to mislead and deceive the ordinary purchaser, but that it was designed, adopted, and used for that purpose. Its use was a part of the "cracker campaign" planned in advance. The National Biscuit Company's crackers were the only ones with a red seal on the end of the cartons. The defendants below knew this. And they knew also that crackers are sold for the most part over the counter to careless buyers, who are not apt to examine the carton carefully, but likely to carry in mind some one distinguishing feature, such as a red seal on the ends. The crackers of the National Biscuit Company are put out under many names. Thus the plant at Toledo was called the Worts-Kirk-Bigelow plant, one at Chicago the Kennedy, another the Bremner, and so on. The name of the factory would mean nothing, the presence of the red seal everything to the servant girl or child sent to the grocery for a box of "In-er Seal" crackers. The careless purchaser asking for a box "of those red seal crackers" would take the "Factory Seal" goods, thinking he was getting the "In-er Seal" goods.

But it is insisted that this is a suit on a registered trade-mark, and that a trade-mark cannot be extended beyond the limits fixed in the registration. This is not, however, a suit on a registered trade-mark. Neither the allegations nor the proof would entitle the complainant to relief under the federal act. Warner v. The Searle & Hereth Co., 191 U. S. 195, 24 Sup. Ct. 79, 48 L. Ed. ——. There is no evidence showing that the trade of the National Biscuit Company with foreign countries was injured by the acts complained of. The ground of the relief sought is unfair competition in domestic commerce—the fraudulent imitation of the complainant's trade-mark and cartons for use

in local trade. Conceding, as Mr. Justice Fullér says, in Watch Co. v. Watch Case Co., 179 U. S. 666, 674, 21 Sup. Ct. 270, 45 L. Ed. 365, that in this class of cases "such circumstances must be made out as will show wrongful intent in fact, or justify that inference from the inevitable consequences of the act complained of," they are present in ample measure in the record. The trade-mark which the court is asked to protect is therefore, so far as this suit is concerned, a common-law trade-mark, and its limits are to be determined by its application and use. As Mr. Justice Shiras said in Kohler Mfg. Co. v. Beeshore, 59 Fed. 572, 575, 8 C. C. A. 215, 218: "We are not willing to affirm the proposition that the registration in the Patent Office of a certain name or phrase as a trade-mark * * * will in all cases prevent or estop the owner from adopting and using another name or phrase as a trade-mark." The legal effect of the registry of a trade-mark being restricted to foreign commerce and that with the Indian tribes, it would seem that as to domestic commerce a person might adopt and use a different trade-mark than that registered. Now, the trade-mark actually used—the "In-er Seal" trade-mark, as known to the public—was printed in white letters upon a vivid red background of a peculiar shade. Before the defendants began to place their goods upon the market, this vivid red color had become associated with the "In-er Seal" trade-mark. The defendants below knew this when they put their "Factory Seal" trade-mark upon the vivid red background of precisely the same shade. While it is true no one has the right to monopolize a particular color, yet the courts have repeatedly held that a person may be restrained from using a particular color, in combination with other things, to mislead the public, and market his goods as those of another. Garrett v. T. H. Garrett & Co., 78 Fed. 472, 24 C. C. A. 173; Fairbank Co. v. Bell Mfg. Co., 77 Fed. 869, 23 C. C. A. 554; Hires Co. v. Consumers' Co., 100 Fed. 809, 41 C. C. A. 71; Morgan Co. v. Whittier Co. (C. C.) 118 Fed. 657; Cohen v. Delavina (C. C.) 104 Fed. 946. We are satisfied that the "Factory Seal" trade-mark, when printed on the vivid red background and applied to the ends of a cracker or biscuit carton, is an infringement of the "In-er Seal" trade-mark, and should be enjoined.

It is submitted that the decree of the Circuit Court enjoining the use of any imitation of the "In-er Seal" trade-mark is inconsistent with the order of this court reversing the first part of Judge Wanty's restraining order respecting the trade-mark. But Judge Wanty's order restrained the use of the "Factory Seal" trade-mark in any manner whatsoever in connection with biscuit or cracker cartons, while the decree of the Circuit Court provides that it may be used when so differentiated in general appearance and application from the "In-er Seal" trade-mark as not to be calculated to deceive the ultimate ordinary purchaser. So that in affirming this decree, it is not necessary to prohibit the use in any manner whatsoever of the "Factory Seal" trade-mark, but only its use in a way calculated to mislead and deceive.

But, however this may be, the case is now before us upon the merits, which we have carefully examined, and we are satisfied that the man-

ner in which the "Factory Seal" trade-mark has been used is calculated to mislead and deceive, and constitutes an infringement of the "In-er Seal" trade-mark.

The judgment of the Circuit Court is affirmed.